Howell, J.
The plaintiff, as holder of several notes secured by mortgage, sues to annul a tax sale of the mortgaged property and a subsequent sale thereof by the purchaser, on the grounds of alleged defects and informalities in the tax sale, collusion therein in the second sale, and his right as mortgagee to redeem the land, which he alleges he offered to do according to law within the legal delay. The defense is the general issue, a special denial of the alleged tender, and some special matters, with the prescription or lapse of the right of redemption.
Judgment was rendered in favor of the defendants, and the plaintiff has appealed.
We think the objections to the tax sale on account of alleged defects and irregularities are not sustained by the plaintiff, on whom the burden rested; and the first and most important question to be determined is, has a mortgagee the right to redeem?
It is a rule of general jurisprudence, as well as being a principle of public policy, to construe the redemption laws liberally. 1 R. 424. The object of the State is to collect its revenues, and not to 'deprive its citizens ot any rights. It is well said : “ In construing the redemption laws the courts hold that the word owner is a generic term, which embraces the different species of interest which may be carved out of a fee simple estate. This construction is the only one which can effectuate the intention of the Legislature and protect the interests of all parties concerned in the land sold for non-payment of taxes. In the same estate there may exist a fee simple or life interest or a household. The estate may have been mortgaged to secure a debt, and judgment creditors may have liens upon it, and the land may be in the adverse possession of a stranger to the title, and whose possession may be ripened into a right. Each is an owner, according to the extent of his interest or claim, and each has a right to protect his interest by a redemption from the tax sale. No one can complain of this; the government collects her tax, and the purchase money is refunded to him who claims under the tax sale. Take the case of the judgment creditor. The debtor, by collusion with the purchaser, might divest himself of title so as to defraud the creditor, unless the latter had the right to redeem, and thus disencumber the land arid subject it to his lien. It may, therefore, be laid down as a general rule, that any right whether in law or equity, whether perfect or inchoate, whether in possession or action, amounts to an ownership in the land, and that a charge or lien upon it constitutes a person claiming it an owner, so far as it is necessary to give him the right to redeem.” Blackwell on Tax *209 Titles, marginal p. 423. This doctrine is drawn by the author from many different authorities.
In the civil law a mortgage is considered to be a species of alienation, though not a sale — a real right upon property — a species of pledge, the thing mortgaged being bound for the payment of the debt, or the fulfillment of the obligation; the right of mortgage follows the property, into whatever hands it may pass, and the mortgageor can do no act to impair this right. E. C. C. 3278, 3279, 3282, 3397 ; 2 An. 168; 11 An. 68; 12 An. 776; 13 An. 2; 11 La. 408.
Counsel for the purchaser do not deny this interpretation of the word “ owner,” and admit that from 1847 to 1873 the laws of this State on this subject permitted any person interested in any land to redeem it when sold for taxes; but they contend that the act of 1873 (No. 47), under which this sale was made, limits the right of redemption to the “owners thereof, or their legally authorized agents;” and by section eleven of said act all laws or parts of laws conflicting with that act are repealed; and they say, “the deduction is inevitable, that the Legislature intended, by this last act, to take away from creditors and all other parties interested, except the owner, the right of redemption which they had formerly enjoyed.” ■
Our deduction does not go so far as counsel seem to go. If a mortgagee is a species of owner, a quasi owner, he is embraced in the exception they make, that is, in the express words of the law. But as redemption laws are to receive a liberal interpretation, and as the act of 1873 does not expressly exclude mortgagees, we do not think their rights, as they existed prior to 1873, are so in conflict with those preserved in said act as to be embraced in the repealing clause. We think it should very clearly appear before we adopt the conclusion, that the State, which has declared that the property of the debtor is the common pledge of all his creditors, intends by the process of collecting the contributions of its citizens and inhabitants to defeat absolutely all the rights of creditors upon property subject to those contributions. The right of the State to its necessary revenue is paramount, but it is to be exercised with a strict regard for those other rights which the State itself has granted or guaranteed, especially the rights of parties not delinquent, unless it expressly declares otherwise, for exigencies which make the declaration necessary. The sole object of the State is to collect its revenues, and not to destroy rights, further than is absolutely necessary to effect such collection; and the right to redeem, we think, still exists in the owner or quasi owner, under the prescribed conditions.
The next question presented is, did the plaintiff assert this right in time and in a manner to secure its enforcement 9 He relies on a tender, *210 which he contends he duly and legally made before the expiration of the six months following the sale. It was formally made through a notary public at the residence of the purchaser, who was, however, absent at the time from the State. The purchaser says this was ineffectual, because he resided at the time and, to the knowledge of the plaintiff, was then in West Virginia; because no consignment of the money was made, and because he subsequently offered to receive the money and annul the sale to him; but the plaintiff refused his offer.
The evidence shows that the purchaser has a residence both in New Orleans and West Virginia, spending a large portion of the year in New Orleans, attending to mercantile and other business. Under the circumstances we think the offer by plaintiff was made properly at the residence here, it not appearing that the purchaser had an agent to represent him in such matters. C. P. 406, 407; R. C. C. 2168, No. 6.
It is said by the purchaser’s counsel that it is unnecessary to determine whether or not the tender at the house of the purchaser was good, as it was not consigned by plaintiff, and when acceptance of it was afterward offered the plaintiff refused to pay.
The object of consignment is to exonerate the debtor from further liability and risk, and the failure to make it does not defeat the legality Of a tender. The law says a consignment may be made, but does not make it essential, in case the creditor refuses. C, P. 412; R. C. C. 2167. The plaintiff should not, under the circumstances, be concluded by his refusal to pay when the purchaser offered to accept. The latter had sold to a tKird party, who did not join in the proposal, and who might have refused to concur, as the time for redemption' had expired, and the purchaser denied the plaintiff’s right to make a tender and redeem the land, as well as the regularity and effect of the tender as made. There was room for doubt upon this matter as a legal question, and plaintiff had already submitted it to a court of justice.
We conclude that the plaintiff as mortgager has the right to redeem, and that upon paying the purchaser the price and interest as prescribed by the act of 1873, the sales will be annulled and the property subjected to the mortgage sought to be enforced.
It is therefore ordered that the judgment appealed from be reversed, and that upon plaintiff paying to defendant, H. Shepherd, the sum of $5860 47, the purchase price, with fifty per centum additional and all costs incurred by said Shepherd as purchaser, the tax sale of third of February, 1874, from M. Morgans, tax collector, to Henry Shepherd, and all subsequent sales of said property, be annulled. ■ And it-is further ordered that the plaintiff have judgment against Mrs. Solidelle Le Gardeur, wife of Joseph Deynoodt, for $33,750, with eight per cent, interest on $16,875 from fourth of January, 1873, and on like sum *211 from fourth January, 1874, with five per cent, on the total of principal and interest for attorney’s fees, costs of copies of notarial acts and costs of protest, with vendor’s privilege and mortgage on the said property described in plaintiff’s petition. The defendants and appellees to pay costs in both courts.
On Amending the Judgment.
Howell, J.
Upon the suggestion of counsel for defendant and the consent of plaintiff, the decree herein is amended to read as follows :
It is therefore ordered that the judgment appealed from be reversed, and that upon plaintiff paying to defendant, H. Shepherd, within ten legal days from this date, thirteenth March, 1875, the sum of $5860 47, the purchase price, with fifty per centum additional, and all costs incurred by said Shepherd as purchaser, the tax sale of third of February, 1874, from* M. Morgans, tax collector, to said Henry Shepherd, and all subsequent sales of said property be annulled. And it is further ordered that the plaintiff have judgment against Mrs. Solidelle Le Gardeur, wife of Joseph Deynoodt, for $33,750, with eight percent, interest on $16,875 from fourth of January, 1873, and on like sum from fourth January, 1874, with five per cent, on the total of principal and interest for attorneys’ fees, costs of copies of notarial acts and costs of protest, with vendor’s privilege and mortgage on the said property described in plaintiff’s petition. The right of plaintiff to enforce his said privilege and mortgage to be conditioned on his making the above payment within the time above prescribed. It.is further ordered that the defendants and appellees pay costs in both courts.