## Meyers, Appellant, v. Meyers.

*Evidence—Parol evidence—Written instrument—Fraud—Attack on instrument by one not a party to it.*

The equitable rule that when a party to a written instrument seeks to vary its terms by parol testimony on the ground of fraud, accident or mistake, the evidence must be clear, precise and indubitable, does not apply, when one not a party to the instrument seeks to defeat its effect on some right claimed by him, on the ground that through collusion between the parties, it was executed with the design and used for the purpose of defrauding him. In the latter case the fraud alleged is to be proved like any other matter of fact in a proceeding at law, by the preponderance of testimony, and this must in general be determined by a jury.

*Debtor and creditor—Payment—Fraud—Evidence—Judgment.*

The satisfaction of a debt due to one creditor is not in itself a fraud on other creditors. To impeach the payment or securing of an actual debt there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation; or, secondly, some other benefit to the creditor beyond mere payment of his debt; or lastly, some injury to the other creditor beyond mere postponement of the debt preferred.

Where a wife attacks a judgment confessed by her husband to his sister on the ground that it was given with the intent to hinder and delay the collection of his debt to her, parol evidence is admissible to show the fraud, and its existence is to be determined by a jury from the preponderance of the testimony.

Argued Jan. 13, 1904. Appeal, No. 14, Jan. T., 1904, by plaintiff, from judgment of C. P. Luzerne Co., May T., 1898, No. 665, on verdict for defendant in case of Sarah M. Myers v. Elizabeth Myers. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Ejectment for land in the city of Wilkes-Barre.    Before
WHEATON, J.

At the trial it appeared that the land in controversy was at
one time the property of William C. Meyers, plaintiff's husband.
The evidence showed that Meyers had confessed judgment to his
sister, and that the sister, who was the defendant, bought in the
property at a sale under a judgment.    Subsequently plaintiff
recovered the judgment against her husband, issued execution
thereon, and bought in her husband's interest in the property.

The court charged in part as follows:

[The language of the books on that subject is that the bur-
den is upon a person who seeks to overthrow a written instru-
ment like this sealed note, which on its face imports a consid-
eration—the burden is upon such a person to prove not by a
mere preponderance of evidence, not by what is known in the
law as a mere weight of the evidence, that the transaction is
such as would require or impel a chancellor to wipe that paper
out of existence,—but they are bound to establish facts to the
satisfaction of a chancellor, by proof that is known as clear,
precise, explicit, unequivocal and indubitable—or at least of
a character to which some of these terms apply.    These terms
the Supreme Court says are used by the courts in defining the
requisite proof of a particular fact to be made out by verbal
testimony, and they mean that a conviction shall be fastened
in the minds of jurors as strong as verbal testimony is able to
convey.    They mean that witnesses shall be found to be cred-
ible, that the facts to which they testify are distinctly remem-
bered, that the details are narrated exactly and in due order
and that their statements are true.    It is a high order of proof
and, indeed, the highest order of proof which is required in a
civil proceeding.

If, in a case of this kind, the court sitting as a chancellor,
would not hold the proof offered to be up to the standard as
I have defined it to you, then it is his duty to so declare to
the jury and to take away from the determination of the jury
the question whether the paper attacked shall be overcome or
entirely wiped out; and after a careful consideration of the
testimony in this case, I am not satisfied that there is in it
such clear, precise and indubitable proof of fraud, as would

warrant me as a chancellor, in declaring that that judgment note of October 11, 1890, ought to be entirely overthrown and disregarded; and because I believe that the proof is not up to that standard, and because my duty under the law requires me to do so, if I so believe, I have determined to take the question away from you and to say to you that by reason of the fact that the proof on the part of the plaintiff in this respect fails, there can be no verdict for the plaintiff in this case, but the verdict must be for the defendant.] [2]

Plaintiff presented these points :

. If under all the evidence in the case, the jury believe that at the time William C. Meyers gave the note of $600 to his sister, the defendant, that the said note was without any consideration, and that the said William C. Meyers was then indebted to his wife, the plaintiff, for money loaned by her to him out of her separate estate, and that said indebtedness existed at the time of the sheriff's sale of the land described in writ, to the defendant, and that this note was given by said William C. Meyers and accepted by the defendant for the purpose of hindering, delaying and defrauding the plaintiff as a creditor of her husband, and that said sheriff's sale was resorted to for the purpose of carrying this scheme into effect, then the verdict should be for the plaintiff for the land described in the writ. *Answer :* I decline to affirm that point, because I am of opinion that there is no such clear, precise and indubitable proof in the case as would warrant the court as a chancellor, or the jury as a jury, in holding that the transaction involved in the giving and receiving of the $600 note was a fraudulent one. If there had been such testimony of the quantity and quality required by law, and upon a submission of that fact to the jury, the jury had found the transaction to be a fraudulent one, then the point as stated would have been entirely correct and would have been affirmed. [3]

2. If the jury believe under all the evidence that the note of $600 given by William C. Meyers to the defendant was without consideration and was executed for the purpose of hindering, delaying and defrauding the plaintiff out of her claim as a creditor of her husband, and that the sheriff's sale on the execution issued on this judgment, was simply the means adopted to transfer the title of the property to the defendant

and carry out said fraudulent scheme, then the plaintiff was at liberty to put her claim in judgment and attack the validity and legality of the transaction by means of a sheriff's sale of the property, and an action of ejectment to recover the possession thereof within six years after the sheriff's sale of the property to the defendant. *Answer :* If I had decided to submit this question to you, if I had thought there was sufficient proof of the kind required by law to submit to your determination the question of fraud or lack of fraud in the giving of the $600 note then this point would have been stated, I think, entirely correctly, and I should have affirmed it. But as I have decided to take it away from you for the reasons stated, I decline to charge as therein requested. [4]

Defendant presented this point:

That there is not sufficient evidence that the judgment of William C. Meyers to Elizabeth Meyers was fraudulent, to submit to a jury, and therefore the verdict must be for the defendant. *Answer :* I affirm that point, for the reasons which I have stated in my general charge. [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (2–5) above instructions, quoting them.

*John McGahren,* with him *P. M. Thornton,* for appellant.— Under the evidence we claim the plaintiff's points which constitute the third and fourth assignments of error should have been affirmed, and the case submitted to the jury for their decision with proper instructions as to the evidence bearing upon the question of fraud and collusion. It was not a question for the court to determine under all the authorities in this state : Miles v. Lewis, 115 Pa. 580; Snayberger v. Fahl, 195 Pa. 336; Ferris v. Irons, 83 Pa. 179.

Fraud may be proved by circumstantial evidence; it is not necessary that the evidence of collusion be conclusive. Fraud and collusion may be shown by such facts and circumstances as will warrant a presumption of their existence : Quirk v. Ins. Co., 12 Pa. Superior Ct. 250–258; Lowe v. Dalrymple, 117 Pa. 564; Brinks v. Heise, 84 Pa. 246 ; Montgomery Web. Co. v. Dienelt, 133 Pa. 585; Houseman v. Grossman, 177 Pa. 453 ; Kaine v. Weigley, 22 Pa. 179.

Where there is a conflict of testimony it is for the jury: Ferris v. Irons, 83 Pa. 179 ; McMichael v. McDermott, 17 Pa. 353 ; Loucheim v. Henszey, 77 Pa. 305.

*Q. A. Gates,* with him *Bayard Hand,* for appellee.

OPINION BY SMITH, J., April 18, 1904:

· When a party to a written instrument seeks to vary its terms by parol testimony on the ground that, by reason of fraud, accident or mistake, it does not contain the actual agreement of the parties, or that its execution was induced by a contemporaneous oral agreement of such a character that its enforcement would operate as a fraud on him, the evidence to support his allegations must be clear, precise and indubitable. But when one not a party to the instrument seeks to defeat its effect on some right claimed by him, on the ground that, through collusion between the parties, it was executed with the design and used for the purpose of defrauding him, an entirely different question is presented. Here the object of the complaining party is not to vary the terms of the instrument, but to defeat its alleged fraudulent purpose ; and with respect to this end it is not material what the real contract may have been, or what may have induced the execution of the written one. There is no attempt to impeach the validity of the instrument, or its effect, as between the parties to it; the only matter in dispute is the purpose of its execution, in relation to the rights of others who, through a fraudulent design, may be affected by it. In the former case, there is an appeal to the equitable powers of the court, and the evidence must be such as to overcome the presumption in favor of the instrument, arising from the signature of the party, and to move a chancellor to decree its reformation. In the latter case, the demand is based on a right existing at law, and the evidence to maintain this is of a different measure from that required to sustain the equitable claim in the former case. There is no presumption, arising from the signature of the complaining party, to be overcome. While fraud is not to be presumed, but must be proved, the fraud here alleged is to be proved like any other matter of fact in a proceeding at law, by the preponderance of testimony, and this must, in general, be determined by a jury:

Miles v. Lewis, 115 Pa. 580; Ferris v. Irons, 83 Pa. 179; Painter v. Drum, 40 Pa. 467.

While a debtor may not dispose of his property in fraud of his creditors, he may legally, aside from the federal bankrupt law, prefer one creditor to another, by either payment in cash or a transfer of property. The satisfaction of the debt due to one is not a fraud on others; nor is it unlawful for one creditor to accept satisfaction or to seize or exhaust the debtor's means for that purpose although other claims are thus defeated. When the paramount purpose is the payment of the debt, matters incidental to its recovery will not arrest or defeat the creditor's remedy. Yet there may be circumstances connected with such payment that serve as indicia of a design fraudulent as against other creditors. " What evidence will be sufficient for that purpose will of course depend on the circumstances of each case. It may be of excess of amount in a judgment, of inadequate price in a conveyance, a reservation of advantage to the grantor as in Bentz v. Rockey, 69 Pa. 71, or of giving the debtor a weapon to force other creditors to a compromise as in Bunn v. Ahl, 29 Pa. 387, or the more common case of hindering and delaying them altogether. It may be said, as a general rule, that to impeach the payment or securing of an actual debt there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation; or, secondly, some other benefit to the creditor beyond mere payment of his debt; or, lastly, some injury to the other creditors beyond mere postponement to the debt preferred: " Werner v. Zierfuss, 162 Pa. 360; Snayberger v. Fahl, 195 Pa. 336. In Werner v. Zierfuss the trial judge instructed the jury that " even though there may have been an honest indebtedness for cash advanced by Zierfuss, yet if at the time he took it for the purpose of assisting Gross to hinder or defraud his other creditors, it was a fraudulent judgment and would be void; " and after calling attention to the distinction between the necessary effect of a preference and an intent to hinder, he continued: " The effect would be of course, to hinder any other creditors and prevent their getting their money, but I would have the right to do that, and you would have the right to take the judgment; but where a judgment is confessed not for the purpose of protecting me, but

where the intent is to defeat the other creditors, and not for the protection of my debt, then the judgment would be void." . The Supreme Court, after quoting this, said, affirming the judgment: "This is the language of all our cases. None of them afford any basis for the contention that payment of an actual debt closes inquiry into the fraudulent intent of such payment, but only that such intent cannot be found without additional evidence." Montgomery Web Co. v. Dienelt, 133 Pa. 585, is another illustration of a payment fraudulent as against an unpaid creditor.

In the case before us, the plaintiff alleges that the judgment confessed by her husband to the defendant, on which his interest in the land was first sold, was given with intent to hinder and delay the collection of his debt to her. We have already indicated the principles on which the controversy on this point is to be decided. Whether there was an indebtedness by Meyers to his wife, the collection of which was hindered or delayed by the judgment given to his sister and the sale of his land thereunder; with what intent this judgment was given; whether its consideration was real or colorable,—whether, as alleged, it was given in discharge of an indebtedness previously contracted, for which he was legally bound; and whether circumstances existed, of the character defined in Werner v. Zierfuss, supra, indicating a fraudulent purpose in giving the judgment, were, upon the evidence in the case, questions to be determined by the jury.

All the specifications of error are sustained and the judgment is reversed with a venire de novo.